**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>CHARLES GLENN PERKINS,<br>*Defendant-Appellant*. | No. 15-30035<br><br>D.C. No.<br>2:13-cr-00096-RSM-1<br><br>OPINION |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, Chief District Judge, Presiding

Argued and Submitted June 22, 2016
San Francisco, California

Filed March 13, 2017

Before: Andrew J. Kleinfeld, A. Wallace Tashima, and
Mary H. Murguia, Circuit Judges.

Opinion by Judge Tashima;
Dissent by Judge Murguia

## SUMMARY[*]

### Criminal Law

The panel reversed the district court's denial of a motion to suppress evidence obtained from the defendant's computers pursuant to a search warrant, vacated his conviction for receipt of child pornography, and remanded for further proceedings.

The panel held that (1) the district court clearly erred in finding that a DHS special agent did not omit relevant information with at least reckless disregard for whether the omissions would render the warrant application misleading; and (2) had the omitted information been included, the application would not have supported probable cause.

Dissenting, Judge Murguia wrote that the majority fails to afford the district court its due deference, retroactively applies a new rule that is likely unsupported by case law, and improperly weighs the totality of circumstances in a probable cause determination.

### COUNSEL

Corey Endo (argued) and Vicki Lai, Federal Public Defender's Office, Seattle, Washington, for Defendant-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Teal Luthy Miller (argued), Assistant United States Attorney; Annette L. Hayes, United States Attorney, Western District of Washington; Office of the United States Attorney, Seattle, Washington; for Plaintiff-Appellee.

## OPINION

TASHIMA, Circuit Judge:

Charles Perkins appeals his conviction for receipt of child pornography. Perkins entered a conditional guilty plea, reserving the right to appeal the district court's denial of his motion to suppress evidence obtained from his home computers pursuant to a search warrant. The district court denied the motion, concluding that the investigating agent did not deliberately or recklessly mislead the magistrate judge by omitting material information from the warrant application. The court also found that there was probable cause to justify the search. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

## I.

### A. The Canadian Investigation

On December 29, 2012, Charles Perkins, a then-52-year-old citizen of the United States, was traveling through Toronto International Airport on his way home to Washington State after taking a trip to Chile with his wife and mother-in-law. Canadian Border Services Agency ("CBSA") officers stopped Perkins after learning that he was a registered sex offender. Perkins had a 1987 first-degree incest conviction and a 1990 first-degree child molestation

conviction.  A CBSA officer searched the laptop that Perkins was carrying and, in a folder labeled "cperk," found two images that he believed to be child pornography.  A Peel Regional Police ("PRP") officer also reviewed the images and, based on his review, arrested Perkins for possession of child pornography. CBSA authorities seized the laptop, along with a digital camera and a memory card.

The next day, Constable Andrew Ullock, a PRP officer specializing in the investigation of child exploitation crimes, interviewed Perkins.  Perkins stated that the laptop belonged to his wife and that his computers were at his home in Washington. Perkins' wife, T.W., confirmed that she mostly used the laptop, but that Perkins occasionally used it. Constable Ullock examined Perkins' luggage and additionally seized a digital memory card, a memory stick, and a cellular phone.  Pursuant to a Canadian search warrant, Constable Ullock searched the laptop and found the two images that the CBSA officer had originally discovered.  Constable Ullock did not find any other suspected contraband in the laptop or in any of the other digital devices.

After reviewing the images, Constable Ullock concluded that they did not constitute child pornography under Canadian law.  In his report of the investigation, he describes the two images as follows:

> Image 1: Filename 997.jpg
>
> . . .
>
> Description:  This is a Caucasian female that I would estimate to be between the ages of 13 to 15 years of age.  The image shows her only

from the mid torso up, including her face. The girl appears to be nude and her breasts are clearly visible . . . . In spite of the fact that this girl is under the age of 18, her breasts are not the dominant feature of the image, and there is no obvious sexual purpose to the image. Therefore this image does not meet the Canadian Criminal Code definition of child pornography.

Image 2: Filename 989.jpg

. . .

Description:  This is an image of a Caucasian female that I would estimate to be between the ages of 13 to 14 years of age.  This girl is sitting and appears to be taking a picture of herself by holding out a camera with her right arm slightly above her head looking down on her. . . . This girl is completely nude and towards the bottom of the picture a small portion of her vagina can be seen. . . . However in this photo the view of the girls' [sic] vagina makes it a minor aspect of the photo, and her hair drapes over much of her breasts, which decrease[s] their prominence. Again there is no clear and obvious sexual purpose to the picture, which means it does not meet the Criminal Code of Canada definition of child pornography.

Based on Constable Ullock's recommendation, the charge against Perkins was dropped on January 10, 2013.

**B.  The American Investigation**

The case was forwarded to Special Agent Tim Ensley of the United States Department of Homeland Security.  Agent Ensley received the two images for first-hand review on January 14, 2013.  Prior to receiving the images, Agent Ensley drafted an affidavit, based on Constable Ullock's report, in support of a warrant application to search all the digital devices in Perkins' home in Washington.  The affidavit explained that Canadian officers stopped Perkins because of his prior convictions and arrested him after reviewing the images.  The affidavit did not state that the charge had been dropped pursuant to Constable Ullock's determination that the images were not pornographic.

After reviewing the images for himself, Agent Ensley included the following descriptions in his affidavit:

> Filename 997.jpg
>
> . . .
>
> Description: This color image depicts a white female (hereinafter referred to as "child victim") sitting on the edge of what appears to be a bed.  The child victim appears to be naked at least from the waist up, and can be seen from mid-abdomen to the top of her head.  The child victim's breasts are clearly visible . . . .  The child victim is young in appearance and appears to be between twelve and fourteen years of age.
>
> Filename 989.jpg

. . .

> Description:  This color image depicts a white
> female (hereinafter referred to as "child
> victim") sitting on  what appears to be a bed
> with one arm stretched out taking a picture of
> herself.  The child victim is completely nude
> and can be seen in the image from her upper
> thigh area to the top of her forehead.  The
> child victim's breasts and genital area are
> clearly visible. . . . The child victim is young
> in appearance and appears to be between
> twelve and fourteen years of age.

Agent Ensley concluded that the second image (hereinafter referred to as the "989.jpg image") met the federal definition of child pornography.  The warrant application did not include copies of either image.  On January 16, 2013, the magistrate issued the warrant.

## C.  Perkins' Motion to Suppress and Request for a *Franks* Hearing

The search pursuant to the warrant revealed several images of child pornography on Perkins' computers, and he was charged with one count of receipt of child pornography and one count of possession of child pornography.  Perkins moved to suppress the evidence, arguing that the warrant lacked probable cause.  Alternatively, Perkins argued that Agent Ensley deliberately or recklessly omitted material facts from the affidavit, entitling him to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).  The district court denied the motion in its entirety.  On June 6, 2013, Perkins conditionally pleaded guilty to one count of receipt of child pornography,

reserving the right to appeal the district court's decision on his motion to suppress and for a *Franks* hearing. The district court sentenced Perkins to an 180-month term of imprisonment.

Perkins appealed. On July 25, 2014, we reversed the district court's denial of a *Franks* hearing. *United States v. Perkins*, 583 F. App'x 796, 797 (9th Cir. 2014).[1] We concluded that, based on Agent Ensley's omissions of: the dropping of the Canadian charge; portions of Constable Ullock's description of the images; and copies of the images, Perkins had made a substantial preliminary showing that Agent Ensley deliberately or recklessly omitted potentially material information. *Id.* We remanded to the district court to hold a *Franks* hearing. *Id.*[2]

## D. The *Franks* Hearing

The district court held the *Franks* hearing on November 13, 2014. Agent Ensley was the only witness. He testified that it was the "general practice" in the Western District of Washington not to provide copies of the images at issue.

---

[1] We did not reach Perkins' appeal from the denial of his motion to suppress. *Perkins*, 583 F. App'x at 797 ("We do not reach his motion to suppress.").

[2] The dissent reads our prior reversal more narrowly, concluding that "the district court . . . was not required to consider whether Agent Ensley recklessly or deliberately omitted the actual images from the search warrant application." Dissent at 29. But our earlier mandate contained no such limitation. We reversed and remanded for further proceedings, including the holding of a *Franks* hearing. *Perkins*, 583 F. App'x at 797. As noted earlier, *see* footnote 1, *supra*, we did not reach the probable cause issue on which the appeal from the denial of the motion to suppress was based. *See id.*

Agent Ensley further testified that he omitted the fact that Canadian authorities dropped the charge against Perkins because he believed this fact was "irrelevant to [his] development of probable cause in the U.S., based on U.S. laws."

Agent Ensley also testified about his drafting process. He stated that, prior to receiving the images, he had already "fully drafted" the affidavit using Constable Ullock's report. He used Constable Ullock's descriptions as a "temporary filler" in the draft but ultimately omitted portions that he deemed to be irrelevant "legal conclusions . . . based on Canadian law." However, when pressed about the differences between Canadian and U.S. child pornography laws, Agent Ensley conceded that the "sexual purpose" requirement under Canadian law and the "lascivious" requirement under U.S. law were "connected, obviously in a certain way. The lascivious exhibition – It does have a sexual aspect to it, a sexual exhibition of the genitalia, yes." Agent Ensley admitted that whether an image depicts the lascivious exhibition of genitals or pubic area (and is therefore pornographic under U.S. law) is "very subjective." However, he maintained that it was "very clear to [him]" that the 989.jpg image was child pornography.

On February 11, 2015, the district court concluded that Agent Ensley did not intentionally or recklessly mislead the magistrate. The court reaffirmed its prior 2013 determination that the affidavit established probable cause and again denied Perkins' motion to suppress. *United States v. Perkins*, 2015 WL 630934 (W.D. Wash. 2015). Perkins timely appealed.

**II.**

We review for clear error a district court's findings that an affidavit did not contain purposefully or recklessly false statements or omissions. *United States v. Elliott*, 322 F.3d 710, 714 (9th Cir. 2003). "Review under the clearly erroneous standard is significantly deferential, 'requiring for reversal a definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. Maldonado*, 215 F.3d 1046, 1050 (9th Cir. 2000)). We review de novo the district court's determination "whether probable cause is lacking because of alleged misstatements or omissions in the supporting affidavit." *Id.* (quoting *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000)). "Whether any omissions or misstatements are material is a mixed question of law and fact which we also review de novo." *Id.* (citation omitted).

"We are also obligated, where possible, to review de novo the legal determination that a given image depicts a 'lascivious exhibition of the genitals.'" *United States v. Brunette*, 256 F.3d 14, 17 (1st Cir. 2001) (footnote omitted) (quoting *United States v. Amirault*, 173 F.3d 28, 32–33 (1st Cir. 1999). In this respect, "[o]ur task [is just] like that of the magistrate judge and district court . . . 'simply to make a practical, common-sense decision . . . .'" *Id.* at 16 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

**III.**

Preliminarily, we note that in the search warrant affidavit, Agent Ensley opined that the 989.jpg image met the federal definition of child pornography under 18 U.S.C. § 2256(2)(A)(v), the "lascivious exhibition of the genitals or

pubic area of any person." While "[t]he first four categories [of 'sexually explicit conduct' under § 22546(2)(A)] deal with specific conduct that is easy to identify and describe . . . [t]he fifth category, which turns on the meaning of 'lascivious,' is far more subjective and open to interpretation than the first four." *United States v. Battershell*, 457 F.3d 1048, 1051 (9th Cir. 2006) (citing *Brunette*, 256 F.3d at 18)). In *Battershell*, we further noted that in *Brunette*, the First Circuit "held that 'ordinarily, a magistrate judge must view an image in order to determine whether it depicts the lascivious exhibition of a child's genitals.'" *Id.* at 1053 (quoting *Brunette*, 256 F.3d at 19).

Perkins argues that Agent Ensley intentionally or recklessly omitted material information from the warrant application and that, had that information been included, the application would not have supported probable cause. Under *Franks*, a criminal defendant has the right to challenge the veracity of statements made in support of an application for a search warrant. 438 U.S. at 155–56. To prevail on a *Franks* challenge, the defendant must establish two things by a preponderance of the evidence: first, that "the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant[,]" and second, that the false or misleading statement or omission was material, *i.e.*, "necessary to finding probable cause." *United States v. Martinez-Garcia*, 397 F.3d 1205, 1214–15 (9th Cir. 2005). If both requirements are met, "the search warrant must be voided and the fruits of the search excluded . . . ." *Franks*, 438 U.S. at 156. Because we conclude that Perkins has established both prongs under *Franks*, we hold that the district court erred in denying his motion to suppress.

**A. Intentional or Reckless Disregard for the Truth**

Under the first step of *Franks*, the defendant must show by a preponderance of the evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, made false or misleading statements or omissions in support of the warrant application. *Martinez-Garcia*, 397 F.3d at 1214. A negligent or innocent mistake does not warrant suppression. *Franks*, 438 U.S. at 171. "[A] warrant affidavit must set forth particular facts and circumstances . . . so as to allow the magistrate to make an *independent* evaluation of the matter." *Id.* at 165 (emphasis added). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Illinois v. Gates*, 462 U.S. at 239. An officer presenting a search warrant application has a duty to provide, in good faith, all relevant information to the magistrate. *United States v. Hill*, 459 F.3d 966, 971 n.6 (9th Cir. 2006).

Agent Ensley omitted from the search warrant application: (1) the fact that Canadian authorities dropped the child pornography possession charge against Perkins because the images were not pornographic; (2) important portions of Constable Ullock's description of the 989.jpg image; and (3) copies of the images. At the time he submitted the affidavit, Agent Ensley knew of the dropped charge and of Constable Ullock's description, and had possession of the images. Indeed, he testified that he used Constable Ullock's report as the starting point – a template – in drafting his own affidavit. We conclude that Agent Ensley omitted relevant information from the affidavit that resulted in the misleading impression that image 989.jpg was unequivocally child pornography. Given these circumstances, we conclude that the district

court's finding that Agent Ensley did not intentionally or recklessly mislead the magistrate is clearly erroneous. He acted with at least a reckless disregard for the truth by failing to furnish copies of the images to the magistrate and by his omissions of portions of Constable Ullock's report, which had to be fresh in his mind, for the magistrate's independent review.

The district court accepted Agent Ensley's explanation that he omitted legal opinions from Canadian authorities, which he deemed irrelevant to the question of probable cause under U.S. law. Notwithstanding the significant deference afforded to the district court, we cannot agree that this is a credible explanation. First, Agent Ensley's testimony that Canadian and U.S. laws are "extremely different" is not plausible. During the *Franks* hearing, Agent Ensley accurately described the respective definitions of child pornography under Canadian and U.S. laws.[3] He summarized Canadian law as containing three requirements: (1) the individual must be under 18 years old; (2) the genital or pubic area must be the prominent feature of the visual depiction; and (3) there must be a sexual purpose. But Agent Ensley conceded that the first two requirements are similar under

---

[3] Canadian Criminal Code 163.1(1)(ii) defines child pornography as a visual representation of a child where the "dominant characteristic . . . is the depiction, for a sexual purpose, of a sexual organ." Under U.S. law, child pornography is the visual depiction of a minor engaging in "sexually explicit conduct." 18 U.S.C. § 2256(8). As relevant here, "sexually explicit conduct" includes the "lascivious exhibition of the genitals or pubic area." *Id.* § 2256(2)(A)(v). Whether a depiction is "lascivious" depends on several factors, including whether the focal point is on the child's genitalia or pubic area and whether the depiction is intended or designed to elicit a sexual response in the viewer. *United States v. Overton*, 573 F.3d 679, 686 (9th Cir. 2009).

U.S. law. As for the third requirement, he could not articulate a meaningful difference between Canada's "sexual purpose" requirement and the U.S.'s "lascivious" requirement. He also acknowledged that whether either requirement is met is a subjective determination. Thus, he could hardly identify any material distinction between the two laws, despite his own opinion that they were "extremely different."

Second, Agent Ensley's testimony is belied by his own affidavit. Agent Ensley's repeatedly stated that he omitted Constable Ullock's opinions about the images because they were based on irrelevant Canadian law. Yet Agent Ensley *did* include the opinions of Canadian officials who, after viewing the images, concluded, presumably under Canadian law, that they *were* pornographic. Specifically, he explained that "the CBSA officer believed [one of the images] to be child pornography," and that a PRP officer arrested Perkins after reviewing the images. Along those lines, the affidavit stated that Perkins was arrested after the PRP officer reviewed the two images, but omitted the fact that the charge was dropped after a 15-year veteran officer, specializing in the investigation of child exploitation crimes, examined those same two images and concluded they were not pornographic.

These omissions reveal a clear, intentional pattern in Agent Ensley's actions: he selectively included information bolstering probable cause, while omitting information that did not. We have recognized that an affiant can mislead a magistrate "[b]y reporting less than the total story, [thereby] . . . manipulat[ing] the inferences a magistrate will draw." *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985), *amended by* 769 F.2d 1410 (9th Cir. 1985). Agent Ensley presented a skewed version of events and overstated the incriminating nature of the images. This is not unlike the

situation in *United States v. Jacobs*, 986 F.2d 1231 (8th Cir. 1993), where the affiant acted at least recklessly when he correctly stated that the drug dog showed an "interest" in the defendant's package, but omitted the fact that the drug dog failed to make an official "alert." *Id.* at 1234–35. Similarly, although Agent Ensley correctly stated that Perkins was arrested based on two Canadian officers' review of the images, he failed to inform the magistrate that an expert review of those same images led to the charge being dropped.

Nor was Agent Ensley's description of the 989.jpg image a reliable substitute for the image itself. Agent Ensley knowingly excluded relevant information contained in Constable Ullock's description of the 989.jpg image. Specifically, he omitted Constable Ullock's explanation that "[t]owards the bottom of the picture a small portion of her vagina can be seen" and that "the view of the girls' [sic] vagina makes it a minor aspect of the photo[.]" Details about the placement and prominence of genitalia is highly relevant to determining whether an image is lascivious. *See Overton*, 573 F.3d at 686 (factors in determining lasciviousness include whether the focal point of the depiction is on the child's genitalia or pubic area and whether the visual depiction is intended or designed to elicit a sexual response). Agent Ensley knowingly excised unfavorable parts of Constable Ullock's description.[4] In their place, he opined in a

---

[4] Agent Ensley's testimony that he removed portions of the description that were legal conclusions based on irrelevant Canadian law is not credible. As recited above, he could not explain any significant difference between the U.S. and Canadian definitions of child pornography. Additionally, the omitted details were factual descriptions, not legal conclusions.

conclusory manner that the genital area was "clearly visible" — a characterization that was misleading, at best.**[5]**

By providing an incomplete and misleading recitation of the facts *and withholding the images*, Agent Ensley effectively usurped the magistrate's duty to conduct an independent evaluation of probable cause. *See United States v. Lull*, 824 F.3d 109, 116–17 (4th Cir. 2016) (holding that an affiant acted at least recklessly by omitting facts about an informant's credibility and "usurp[ed] the magistrate's role" in determining probable cause). Whether an image depicts the "lascivious exhibition of the genitals or pubic area of any person," and therefore constitutes child pornography, is a subjective determination. *Battershell*, 457 F.3d at 1051. "[S]uch 'inherent subjectivity is precisely why the determination should be made by a judge,' not the affiant." *United States v. Pavulak*, 700 F.3d 651, 662 (3d Cir. 2012) (quoting *Brunette*, 256 F.3d at 18). Given the circumstances of this case, Agent Ensley was required to provide copies of the images for the magistrate's independent review.**[6]** Instead,

---

**[5]** Agent Ensley's description of the 989.jpg image states that the girl is "sitting on what appears to be a bed." Constable Ullock's description omits, accurately, any mention of a "bed." Agent Ensley's apparent purpose in attesting to that speculation as a fact is because it is one of the *Dost* factors. *See United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986) ("whether the setting of the visual depiction is sexually suggestive, *i.e.*, in a place . . . generally associated with sexual activity"), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987). The *Dost* factors are fully discussed in Part III.B.2, *infra*.

**[6]** The dissent asserts that we make a "fatal error" by "retroactively appl[ying] a new rule." Dissent at 27; *see also id*. at 35 n.4 (contending that the district court did not err because "our case law did not establish that Agent Ensley was required to include copies of the images in the first place"). But it has been clearly established law at least since *Griffith v.*

he merely proffered his own conclusion about the 989.jpg image, based on an incomplete and misleading description of the image. This was a breach of the duty Agent Ensley owed to the court. *See United States v. Ruiz*, 758 F.3d 1144, 1149 (9th Cir. 2014).

In sum, the record leaves us with a definite and firm conviction that the district court clearly erred in finding that Agent Ensley did not act with at least a reckless disregard for the truth. Because Agent Ensley "omitted facts required to prevent technically true statements in the affidavit from being misleading," we now turn to the question of whether the affidavit, "once corrected and supplemented, establishes probable cause." *Id.* at 1148 (quoting *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009)).

## B. Probable Cause

Under the second step of *Franks*, the question is whether the omitted fact is "material"; that is, whether it is "necessary to the finding of probable cause." 438 U.S. at 156. The key inquiry is "whether probable cause remains once the evidence presented to the magistrate judge is supplemented with the challenged omissions." *Ruiz*, 758 F.3d at 1149. Probable cause to search a location exists if, based on the totality of the circumstances, there is a "fair probability" that evidence of a crime may be found there. *Hill*, 459 F.3d at 970 (citation omitted).

---

*Kentucky*, 479 U.S. 314 (1987), "that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Id.* at 328.

Once corrected, the search warrant application would include a copy of the 989.jpg image (and the 997.jpg image) and any probable cause determination would be based on a direct review of the images themselves. Thus, Agent Ensley's written description of the images are extraneous. Apart from the images, which were found in the "cperk" folder of the laptop, Perkins' two 20-year-old convictions are the only other potentially suspicious fact.[7] Under these circumstances, we conclude that a corrected warrant application would not support probable cause.

### 1.  Prior Convictions

We are persuaded that the convictions are only marginally relevant, if at all. A suspect's criminal history "can be

---

[7] Citing *United States v. Krupa*, 658 F.3d 1174 (9th Cir. 2011), the government gestures to the "circumstances" under which the images were found and argues that they support probable cause. In *Krupa*, we held that there was probable cause to search the defendant's computers, based on the "unquestionably suspicious" circumstances of "15 computers under the control of a civilian with no apparent ties to the military in a home on a military base in which children resided and for which the military police had received a report of child neglect." *Id.* at 1178–79. By contrast, Perkins was not found in an unusual place where his mere presence was questionable. He arrived in Toronto with his wife and mother-in-law after completing a cruise to Chile. No ongoing incident or contemporaneous report led Canadian border authorities to stop Perkins. No children were involved. Perkins was stopped only because of his prior convictions, which, as explained below, do not support probable cause. Given that he had been traveling, the amount of technology he was carrying (a laptop, digital camera, three memory cards, and a cell phone) was not suspicious. Moreover, a search of all these devices revealed only the two images as possible contraband. And, as it turned out, Perkins was *not* in possession of any contraband, *i.e.*, child pornography, at the locus where he possessed the suspected images, in Canada. *Krupa* does not support the government's position.

helpful in establishing probable cause, especially where the previous arrest or conviction involves a crime of the same general nature as the one the warrant is seeking to uncover." *United States v. Nora*, 765 F.3d 1049, 1059 (9th Cir. 2014) (quoting *Greenstreet v. Cty. of San Bernardino*, 41 F.3d 1306, 1309 (9th Cir. 1994)). However, a past conviction is relevant only to the extent it increases the likelihood that evidence of the suspected crime will be found. *See id.* (holding that the defendant's prior firearms convictions did not speak to the issue of "whether a fair probability existed that [he] owned *other* firearms . . . and thus are of marginal relevance to the probable cause issue before us"). "[T]he bare inference that those who molest children are likely to possess child pornography . . . does not establish probable cause to search a suspected child molester's home for child pornography." *United States v. Needham*, 718 F.3d 1190, 1195 (9th Cir. 2013).

Perkins had two prior convictions: one for first-degree incest in 1987 and one for first-degree child molestation in 1990. The affidavit does not explain why these convictions, both more than twenty years old, made it more likely that child pornography would be found on Perkins' home computers. At most, Agent Ensley offers a boilerplate description of a child pornography collector, characterized as someone who "may receive sexual gratification, stimulation, and satisfaction from contact with children[.]" Such a generalized statement, which "was not drafted with the facts of this case or this particular defendant in mind," does little to support probable cause. *United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1990); *see also Pavulak*, 700 F.3d at 663 ("Pavulak's prior child-molestation convictions are not sufficient to establish or even to hint at probable cause as to the wholly separate crime of possessing child pornography

absent any allegation of a correlation between the two types of crimes." (citation omitted)).

The age of Perkins' convictions further diminishes any marginal relevance they may have had. As explained in *United States v. Falso*, 544 F.3d 110 (2d Cir. 2008), the length of time that elapses between a prior crime and the suspected offense is relevant to the probable cause analysis. *Id.* at 123. In *Falso*, the court deemed the defendant's 18-year-old sexual abuse of a minor conviction as "only marginally relevant" to the suspected child-pornography offense. *Id.* Although the court recognized that "there are cases where it may be appropriate for a district court to consider a dated sex crime[,] for example, where there is evidence of ongoing impropriety," the affidavit did not "bridge the temporal gap between Falso's eighteen-year old sex offense and the suspected child-pornography offense." *Id.* (citation omitted). Likewise here, there is nothing to connect Perkins's 20-year-old convictions to whether there was a fair probability that Perkins had child pornography on his home computer.

The government, citing *United States v. Colbert*, 605 F.3d 573 (8th Cir. 2010), argues that "[t]here is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography." *Id.* at 578. The government's reliance on *Colbert* is misplaced. In *Colbert*, police obtained a warrant to search the defendant's home for child pornography after receiving a report that the defendant had attempted to entice a five-year-old at a park to follow him to his apartment, "where he claimed he had movies for her to watch and other things for her to do." *Id.* at 577–78. Thus, the warrant was for "the very place where

Colbert had expressed a desire to be alone with a five-year-old girl." *Id.* at 578. The court explained:

> Colbert's attempt to entice a child was a factor that the judicial officer reasonably could have considered in determining whether Colbert likely possessed child pornography, all the more so in light of the evidence that Colbert heightened the allure of his attempted inveiglement by telling the child that he had movies she would like to watch. That information established a *direct link* to Colbert's apartment and raised a fair question as to the nature of the materials to which he had referred.

*Id.* (emphasis added). In other words, the warrant to search the defendant's home for child pornography was based on the defendant's "*contemporaneous* attempt to entice a child," during which the defendant referenced viewing materials, establishing a common link between the two crimes. *Id.* at 577 (emphasis added). This is a far cry from a suspicion that Perkins' home computers contained child pornography based on his child molestation conviction from more than 20 years ago.

Absent any explanation as to why Perkins' 20-year-old convictions made it more likely that he possessed child pornography, we conclude that the convictions do not support probable cause.

*2. Images*

We now turn to the question of whether the two images, found in the "cperk" folder of the laptop that Perkins carried while passing through Canada, are sufficient to establish a fair probability that there was child pornography on Perkins' home computer in Washington. We conclude that the answer is no.

In cases of suspected possession of child pornography where the warrant application relies on the individual's possession of certain images, we assess whether those images constituted child pornography. *See, e.g.*, *Battershell*, 457 F.3d at 1051–53; *Hill*, 459 F.3d at 970–71 ("Thus the more precise question we must answer is whether the officer's affidavit established probable cause that the images on the defendant's computer were—as described—lascivious."). The typical starting point for determining whether a particular image is lascivious, and therefore pornographic, is the six-factor test articulated in *Dost*, 636 F. Supp. 828. Those factors are:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> 4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id.* at 832. The *Dost* factors "are neither exclusive nor conclusive," and courts may consider "any other factor that may be relevant in a particular case." *Overton*, 573 F.3d at 686–87.

We first note that Perkins legally possessed both the 989.jpg and 997.jpg images in Canada. When all was said and done, Canadian authorities concluded that neither image was pornographic. We conclude that the 997.jpg image does not constitute child pornography, and the government does not contend otherwise. That leaves the 989.jpg image.[8] The image appears to be a selfie, taken by the subject of herself, who is holding the camera at an angle slightly above her head and shooting downwards. The image captures the subject's forehead down to her upper thigh. Because of the angle, her head and torso predominate the image and cast a shadow on the genital area, which is pictured in the far bottom right-hand corner. She is sitting down, although it is unclear on what.

Other than the fact that the subject is nude, the image lacks any traits that would make it sexually suggestive. But

---

[8] Neither the 989.jpg image nor the 997.jpg image is a part of the record. The government, however, concurrently with the filing of its answering brief, filed a motion for leave to file electronic copies of these two images under seal. We granted the unopposed motion and commend the government for its candor. The panel has viewed both images.

"not all images of nude children are pornographic." *Hill*, 459 F.3d at 970; *see also Dost*, 636 F. Supp. at 832 ("[T]he visual depiction may not constitute a 'lascivious exhibition' of the genitals, despite the fact that the genitals are visible."). The subject is not posed in a sexual position with, for example, "her open legs in the foreground." *Dost*, 636 F. Supp. at 832. She is not pictured with any sexual items. She is sitting in an "ordinary way for her age." *Id.* Indeed, if the subject were clothed, this would be a completely unremarkable photo. Viewing the image as a whole, we conclude, under the *Dost* six-factor test, that it does not depict the "lascivious exhibition of the genitals or pubic area."[9]   18 U.S.C. § 2256(2)(A)(v).

In short, a warrant application explaining that an individual with two 20-year-old convictions was in legal possession of two non-pornographic images while traveling through Canada is insufficient to support probable cause to search his home computers in Washington for child pornography.[10]  We therefore conclude that Agent Ensley's

---

[9] We note that "[o]ur task, like that of the magistrate judge and the district court, 'is simply to make a common-sense decision . . . .'" *Brunette*, 256 F.3d at 16 (quoting *Illinois v. Gates*, 462 U.S. at 238).

[10] Quoting *United States v. McCarty*, 648 F.3d 820, 839 (9th Cir.2011), that "the government is *not* required to prove that all or any of the photographs *actually exhibited* child pornography in order to establish probable cause for [the defendant's] arrest," the dissent implies an obverse rule under which photos are *never* required, regardless of the circumstances. Dissent at 38. But that statement must be read against the backdrop of controlling law that *McCarty* recognizes, that "the officers [must have] an objectively reasonable belief that [the defendant] committed a crime, based on the totality of the relevant circumstances." 648 F.3d at 839. Here, given that the images were not pornographic and were legally possessed by Perkins in Canada, and the only other evidence

omissions, including particularly a copy of the 987.jpg image, were material under the second step of *Franks*.[11]

We emphasize that this was an investigation of a suspected "lascivious" image under **§** 2256(2)(A)(v), the meaning of which is subjective. *Battershell*, 457 F.3d at 1051. And to make that subjective determination, "we rely on the judgment of neutral and detached magistrates to determine whether probable cause exists . . . ." *Id*. at 1050. As the First Circuit noted in *Brunette*, "[t]hat inherent subjectivity is precisely why the determination should be made by a judge, not an agent." And that "[a] judge cannot ordinarily make this determination without . . . a look at the allegedly pornographic images . . . ." 256 F.3d at 18.[12]

_____

tendered in support of probable cause was two 20-year-old convictions, Agent Ensley's "belief that [Perkins] committed crimes related to child pornography was [*not*] an objectively reasonable one." *Id.* at 840.

[11] The dissent criticizes the majority for "fail[ing] to adequately address the fact that Agent Ensley's expert conclusion that one of the images was child pornography would remain in a corrected affidavit." Dissent at 36. But a corrected affidavit would also contain Constable Ullock's expert conclusion that the image was not pornography – that the image had "no obvious sexual purpose." This split of expert opinion only heightens the need to make the image available for the magistrate's independent review. In this regard, we note that the best the dissent can muster up is that the image is "borderline." *Id.*

[12] Our determination that in § 2256(2)(A)(v) investigations, search warrant applications should ordinarily include copies of the offending images is not contrary to *Battershell*, in which we observed that "failing to include a photograph in a warrant application is not fatal to establishing probable cause." 457 F.3d at 1053. There, we were concerned with investigations into possible violations of § 2256(2)(A)(i)–(iv), *not* with a possible violation of subdivision (v). Contrary to the dissent's argument, *Battershell* confirms, rather than contradicts, our approach. There, we

**IV.**

We hold that the district court clearly erred in finding that Agent Ensley did not omit relevant information with at least a reckless disregard for whether the omissions would render the warrant application misleading. Had the omitted information been included, the application would not have supported probable cause. We, therefore, reverse the district court's denial of the motion to suppress evidence obtained pursuant to the search warrant, and vacate Perkins' conviction. The case is remanded for further proceedings consistent with this opinion.

**REVERSED, conviction VACATED, and REMANDED.**

---

held that "[t]he fifth category, which turns on the meaning of 'lascivious,' is far more subjective and open to interpretation than the first four." *Battershell*, 457 F.3d at 1051. Because of this, the court in *Battershell* concluded that "Officer Lobdell's terse description, *absent an accompanying photograph*, is insufficient to establish probable cause that the photograph lasciviously exhibited the genitals or pubic area because his conclusory statement is an inherently subjective analysis and it is unclear if the photograph exhibited the young female's genitals or pubic area." *Id.* (emphasis added) (citations omitted). Moreover, the *Battershell* court's subsequent statement that "failing to include a photograph in a warrant application is not fatal to establishing probable cause" was in reference to a second photograph that depicted a child engaged in sexual intercourse, which was deemed to be sexually explicit under one of the first four categories of § 2256(2)(A). *Id.* at 1053. The 989.jpg image here more closely resembles the first image in *Battershell*, which depicts a naked young female in a bathtub, than it does the second image, which depicts intercourse.

MURGUIA, Circuit Judge, dissenting:

Charles Perkins was arrested when he attempted to pass through airport security in Toronto, Canada while carrying a laptop that contained two images of nude female children. A later search of his home computer revealed that Perkins collected more than 600 images and 10 videos of child pornography. Today, the majority holds that Perkins cannot be convicted for his collection. The majority makes three fatal errors: it fails to afford the district court its due deference, retroactively applies a new rule that is likely unsupported by our case law, and improperly weighs the totality of circumstances in a probable cause determination.

First, the majority's review of cold hearing transcripts leads it to mistakenly conclude that the district court judge who heard live testimony could not plausibly believe Agent Ensley. Second, even assuming that Agent Ensley made reckless omissions in his probable cause affidavit, his failure to include the two images in his search warrant application cannot be considered reckless or deliberate because Agent Ensley was under no obligation at that time to produce the images in the first place. Finally, even assuming Agent Ensley was somehow reckless in not including the images in the search warrant application, the totality of the circumstances described in a corrected application—which would include copies of the images, Agent Ensley's expert conclusion that one of the images was child pornography, and Perkins' previous convictions for incest and child molestation—would have supported probable cause for the search warrant. Because the majority misinterprets the evidence and misapplies the law, I respectfully dissent.

I.

In 2014, Perkins appealed to this panel the district court's denial of his motion to suppress evidence and alternative request for a *Franks* hearing. Under *Franks*, a criminal defendant may challenge a probable cause determination that was based on false or incomplete information. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). A *Franks* hearing has two steps. *United States v. Martinez-Garcia*, 397 F.3d 1205, 1214–15 (9th Cir. 2005). First, the court evaluates whether the affiant officer intentionally or recklessly lied or omitted material information in attempting to secure a search warrant. *Id.* If the officer *did not* act intentionally or recklessly, the *Franks* challenge fails. *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009). If the officer *did* act intentionally or recklessly, the court proceeds to the second step and inquires "whether the affidavit, once corrected and supplemented, establishes probable cause." *Id.* If there is still probable cause for the warrant after considering the wrongfully omitted information, the defendant's motion to suppress must be denied. *United States v. Ruiz*, 758 F.3d 1144, 1148 (9th Cir. 2014) ("If probable cause remains after amendment, then no constitutional error has occurred." (internal quotation marks omitted)).

In 2014, we concluded that the district court erred by not granting Perkins a *Franks* hearing, because "Perkins . . . made a substantial preliminary showing that *two* factual omissions were recklessly or deliberately made by [Agent Ensley] applying for a warrant to search Perkins' home for child pornography." *United States v. Perkins*, 583 F. App'x 797, 797 (9th Cir. 2014) (emphasis added). We clearly identified the two factual omissions. "First, although the warrant affidavit stated that Perkins had been charged with possession

of child pornography in Canada, it did not state that the charge was dropped." *Id.* "Second, the affidavit omitted . . . details of the images suggesting that the images were not pornographic," including "the Canadian official's observation that the images had no 'obvious sexual purpose.'" *Id.* Contrary to the majority's claim, we did not conclude that Perkins made a substantial preliminary showing that Agent Ensley recklessly or deliberately omitted "copies of the images." In fact, we merely noted that the two omissions described above "were compounded by the omission of copies of the images," but that "failure to attach the images is not necessarily fatal to the establishment of probable cause." *Id.*

On remand, the district court held a *Franks* hearing and determined, under the first step of *Franks*, that Agent Ensley did not recklessly or deliberately omit from his probable cause affidavit the Canadian official's descriptions of the images or the fact that Canada dropped the charges against Perkins. *United States v. Perkins*, No. CR13–96 RSM, 2015 WL 630934, at *3 (W.D. Wash. Feb. 12, 2015). Given that we identified these two factual omissions as the only two potentially reckless or deliberate omissions Agent Ensley made, *Perkins*, 583 F. App'x at 797, the district court did not, and was not required to, consider whether Agent Ensley recklessly or deliberately omitted the actual images from the search warrant application. The district court's final order is now before this panel.

After holding a *Franks* hearing, a district court's determination that an officer did not intentionally or recklessly omit information is reviewed for clear error. *Martinez-Garcia*, 397 F.3d at 1215 n.5. This is a high standard, which by design is difficult to meet. *See, e.g.,*

*Ocean Garden, Inc. v. Marktrade Co., Inc.*, 953 F.2d 500, 502 (9th Cir. 1991) ("[T]o be clearly erroneous, a decision must strike us as wrong with the force of a five-week old, unrefrigerated dead fish." (internal quotation marks and ellipsis omitted)). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985).

In this case, the majority fails to give the district court the deference that our case law requires. The district court found that "Agent Ensley was completely truthful and forthright" and concluded that "Agent Ensley did not intentionally or recklessly omit material information in order to mislead the magistrate judge." *Perkins*, 2015 WL 630934, at *3.

The district court's conclusion is not clearly erroneous. Agent Ensley, an expert in combatting child pornography and child exploitation crimes, adequately explained to the district court that he omitted the Canadian no-charge decision because of the differences between the Canadian and American definitions of child pornography. He explained that the genital or pubic area of an individual has to be the prominent feature in the image to qualify as child pornography in Canada. Canadian law defines child pornography as the visual representation of a child where the "dominant characteristic . . . is the depiction, for a sexual purpose, of a sexual organ." Criminal Code of Canada, R.S.C. 1986, ch. C-46, § 163.1(1)(ii). This "dominant purpose" test is a strict requirement that does not have a perfect match in U.S. law. In the United States, an image can be pornographic if it is "lascivious"—a test that involves a

non-exclusive list of six factors that we have said is "merely a starting point for determining whether a particular image is so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur." *United States v. Overton*, 573 F.3d 679, 686 (9th Cir. 2009) (internal quotation marks omitted). Agent Ensley also said that it never occurred to him to mention the Canadian detective's no-charge decision, and that foreign officials' charging decisions do not affect his evaluation of whether a suspect has violated U.S. law. Agent Ensley's decision for omitting the Canadian no-charge decision was reasonable.

More importantly, the district court's account of Agent Ensley's explanation was surely *plausible*. *See Anderson*, 470 U.S. at 573–74. After watching and listening to Agent Ensley testify in court about his thought process, the district court credited Agent Ensley's testimony in its entirety and found that he did not intentionally or recklessly omit information. Given that a reviewing court's level of deference is even greater "[w]hen findings are based on determinations regarding the credibility of witnesses" because "only the trial judge can be aware of the [witness's] demeanor," *id.*, at 575, it is not a surprise that we have apparently *never* before held that a district court committed clear error by crediting an officer's explanation for an omission. This case should not be the first time we do so.

I cannot agree with the majority's determination that the district court judge, who observed Agent Ensley's testimony, came to an implausible conclusion about Agent Ensley's motivations. I would affirm the district court's decision at the first step of the *Franks* analysis and limit the probable cause inquiry to Agent Ensley's affidavit. *See Ewing*, 588 F.3d at 1224 (finding that good faith or negligent omissions will not

invalidate an affidavit that establishes probable cause). Instead, the majority is putting itself in the shoes of the district court and weighing the evidence differently, which we are not allowed to do.

II.

Even assuming that Agent Ensley committed some reckless omissions in his probable cause affidavit, Agent Ensley's failure to include the two challenged images in his search warrant application cannot be considered a reckless omission.  At the time Agent Ensley submitted his application, it was the custom in the Western District of Washington to not produce the images as part of a search warrant application.  And our case law did not clearly establish that copies of images alleged to be "lascivious" under § 2256(2)(A)(v) needed to be included in a search warrant application.

The majority concludes that Agent Ensley recklessly omitted from the search warrant application: "(1) the fact that Canadian authorities dropped the child pornography possession charge against Perkins; (2) important portions of [the Canadian detective's] description of the 989.jpg image; and (3) copies of the images."  Thus, according to the majority, a corrected affidavit would have included Agent Ensley's affidavit, supplemented by (1) statements that the Canadian authorities dropped any charges against Perkins, (2) the Canadian detective's descriptions of 989.jpg, and (3) the actual images.  Since the images would be produced, the majority concludes, Agent Ensley's written description of the images would be irrelevant.  I disagree with the majority's description of what was required to be included in the corrected affidavit.  Because Agent Ensley did not recklessly

omit the images, the corrected affidavit need not include the images, and Agent Ensley's expert descriptions of the images would not be extraneous.

The majority justifies its conclusion that Agent Ensley recklessly omitted copies of the images by stating "[g]iven the circumstances of this case, Agent Ensley was required to provide copies of the images for the magistrate's independent review." In so holding, the majority does not clearly identify what "circumstances of this case" required production of the image. The majority's holding appears to suggest that any search warrant application based on potential violations of 18 U.S.C. § 2256(2)(A)(v), which defines child pornography as the "lascivious exhibition of the genitals or pubic area of any person," must be accompanied by copies of the images. The majority relies heavily on *United States v. Battershell*, 457 F.3d 1048 (9th Cir. 2006), in support of this new rule. But *Battershell* never articulated a rule that search warrant applications based on violations of § 2256(2)(A)(v) must always contain copies of the images. In fact, the *Battershell* court specifically stated that "failing to include a photograph in a warrant application is not fatal to establishing probable cause. Indeed, a judge may properly issue a warrant based on factual descriptions of an image." *Id.* at 1053 (citations omitted).[1]

Certainly, the *Battershell* court stated that the fifth category of child pornography, identified in § 2256(2)(A)(v),

---

[1] The majority argues that this statement does not apply to images defined under § 2256(2)(A)(v). Opinion at 25–26 n.12. I respectfully disagree. By using the plural form of "copies" and "photographs," the *Battershell* court was referring to both types of images: those based on § 2256(2)(A)(i)-(iv) and § 2256(2)(A)(v). *Battershell*, 457 F.3d at 1053 ("It would have been preferable if the affiant in this case had included *copies* of the *photographs* in the warrant application." (emphasis added)).

is more subjective and open to interpretation than the first four categories, identified in § 2256(2)(A)(i)-(iv). *Id.* at 1051.[2] But *Battershell* stopped short of establishing the rule that the majority sets forth today. The majority relies heavily on the statement in *Battershell* that the officer's "terse description, absent an accompanying photograph, is insufficient to establish probable cause that the photograph lasciviously exhibited the genitals." *Id.* But the description of the image in *Battershell* was significantly terser than Agent Ensley's thorough description in this case. In *Battershell*, the officer described a photograph as "a young female (8-10 YOA) naked in a bathtub." *Id.* That description likely fails to meet § 2256(2)(A)(v)'s definition of "lascivious exhibition of the genitals or pubic area of any person." As the *Battershell* court pointed out, the description fails to make clear whether the photograph even "exhibited the young female's genitals or pubic area." *Id*. Contrast that "terse" description with Agent Ensley's, which clearly states that the girl's genitals are visible:

> Filename 989.jpg
>
> File Path: c\users\cperk\pictures\0989.jpg
>
> Description: This color image depicts a white female (hereinafter referred to as "child victim") sitting on what appears to be a bed with one arm stretched out taking a picture of herself. The child victim is completely nude and can been [*sic*] seen in the image from her upper thigh area to the top of her forehead. The child victim's breasts and genital area are

---

[2] The definitions in § 2256(2)(A)(i)-(iv) are not entirely objective.

clearly visible. The child victim's breasts indicate characteristics of possible early stages of puberty. However, the child victim has no visible pubic hair. The child victim is young in appearance and appears to be between twelve and fourteen years of age.

*Battershell* simply does not stand for the majority's proposed rule that search warrant applications based on violations of § 2256(2)(A)(v) must contain copies of the images.[3] Since there was no clear rule requiring an agent to include copies of the images at the time Agent Ensley submitted his search warrant application, Agent Ensley could not have recklessly or deliberately omitted the copies.[4]

---

[3] The majority also relies heavily upon *United States v. Brunette*, 256 F.3d 14 (1st Cir. 2001). *Battershell* discussed *Brunette* because Battershell had argued that the Ninth Circuit should adopt the First Circuit's rule that "[o]rdinarily, a magistrate judge must view an image in order to determine whether it depicts the lascivious exhibition of a child's genitals." *Battershell*, 457 F.3d at 1053 (quoting *Brunette*, 256 F.3d at 19). Not only is *Brunette* inapplicable in this Circuit, but also *Battershell* specifically refused to adopt the *Brunette* rule. *Id.* ("Thus, the more demanding standard for establishing probable cause of 'lascivious' images that the First Circuit employed in *Brunette* does not apply.").

[4] As noted above, this panel previously held that the district court erred by not granting a *Franks* hearing based on only *two* potential factual omissions: that Perkins' Canadian child pornography charge had been dropped and that Agent Ensley's description of the images was different than the Canadian detective's description. *Perkins*, 583 F. App'x at 797. Thus, the district court never considered whether the omission of the images was reckless. *Perkins*, 2015 WL 630934. The district court was not clearly erroneous for two reasons. First, we did not tell the district court to consider whether the omission of the images was reckless. Second, our case law did not establish that Agent Ensley was required to include copies of the images in the first place.

I therefore disagree that a corrected affidavit in this case must include copies of the images. Instead, I believe a corrected affidavit need only include what the majority describes as "(1) the fact that Canadian authorities dropped the child pornography possession charge against Perkins [and] (2) important portions of [the Canadian Detective's] description of the 989.jpg image."

III.

Finally, even assuming Agent Ensley was somehow reckless in not producing the images, probable cause for the search warrant would still exist based on a corrected affidavit that included copies of the images, Agent Ensley's expert conclusion that one of the images was child pornography, and Perkins' previous convictions for incest and child molestation.

Ultimately, the omissions identified by the majority were immaterial. A corrected affidavit that included the images would still have included Agent Ensley's statement "I have reviewed these images of suspected child pornography and would conclude that the image '989.jpg.' meets the federal definition of child pornography." The majority fails to adequately address the fact that Agent Ensley's expert conclusion that one of the images was child pornography would remain in a corrected affidavit. The images in this case are at the very least borderline child pornography. And a magistrate judge reviewing the images would have been assisted by Agent Ensley's conclusion, based on his working over 200 cases involving child pornography and child exploitation, that 989.jpg qualified as child pornography.

Moreover, the images alone support probable cause. The majority concludes that the images are not pornographic because the subject is not posed in a sexual position, and there is not a lascivious exhibition of her genitals. I respectfully disagree. The child in the 989.jpg image is fully nude, her pubic area is visible, and the image suggests "sexual coyness." *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987). This is not a child in a bathtub. It is hard to imagine a purpose for the image other than to "elicit a sexual response in the viewer." *Id.* The majority, citing language from *Dost*, argues that 989.jpg is not lascivious because the child is not sitting with her open legs in the foreground and is sitting in an ordinary way for her age. But the majority's references to *Dost* are based on examples in which the court was hypothesizing about images that included at least partially *clothed* children. *See id.* ("If, for example, she is *dressed* in a sexually seductive manner, with her open legs in the foreground, the photograph would most likely constitute a lascivious exhibition of the genitals. . . . [I]f the girl is *wearing clothing* appropriate for her age and is sitting in an ordinary way for her age, the visual depiction may not constitute a 'lascivious exhibition' of the genitals, despite the fact that the genitals are visible." (emphasis added)). The majority concludes, "Other than the fact that the subject is nude, the image lacks any traits that would make it sexually suggestive" and that "if the subject were clothed, this would be a completely unremarkable photo." However, if we could assume away the nudity in any image of child pornography, it would dramatically affect the pornographic nature of the image. Here, the child in 989.jpg *is* nude.

But even if the majority were correct that the images are not lascivious, I must point out that such a borderline image could support a finding of probable cause. There is probable cause to search a location if there is a "fair probability" that contraband would be found there. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc). The majority oddly focuses on whether the images are in fact child pornography. But our case law is absolutely clear that the images need not necessarily be pornographic in order to suggest a fair probability that the suspect possesses contraband. *United States v. McCarty*, 648 F.3d 820, 839 (9th Cir. 2011) ("[T]he government is *not* required to prove that all or any of the photographs *actually exhibited* child pornography in order to establish probable cause for [the defendant's] arrest.").[5] We have been clear that an affidavit does not need to set forth a prima facie case in order to establish a fair probability that the defendant possesses contraband. *Gourde*, 440 F.3d at 1069, 1073. Therefore, considering the totality of the circumstances, a corrected affidavit that included copies of the images would support probable cause for a search warrant.

---

[5] The majority discovers an implicit rule in my citation to *McCarty* that photos are never required in a search warrant application, regardless of the circumstances, and criticizes this "obverse" rule because Agent Ensley's belief that Perkins committed child pornography crimes was, in their opinion, not objectively reasonable. Opinion at 24, n.10. Having thoroughly searched my dissent, I disagree that I have implied such a rule. In fact, I am not opposed to a rule that generally requires images to be included in a search warrant affidavit. But, as *McCarty* makes clear, our case law simply does not command it, and I certainly cannot say that the district court clearly erred by concluding that Agent Ensley did not recklessly omit relevant information.

IV.

After conducting a live hearing with in-person testimony from Agent Ensley, the district court credited Agent Ensley's explanation for omitting the Canadian description of the images and the Canadian no-charge decision and affirmatively concluded that Agent Ensley was truthful. Yet the majority reverses the district court's decision because it did not accept Agent Ensley's explanation for distinguishing Canadian from American law. Even assuming that the district court clearly erred in crediting Agent Ensley, the majority inappropriately holds Agent Enlsey reckless for not following a rule that was not clearly established at the time he submitted his search warrant application. I would conclude, consistent with our holding in *Battershell* that, although it is preferable to include copies of the images, a corrected affidavit did not *require* including copies of the images. Agent Enlsey therefore could not have recklessly omitted copies of the images. But even assuming for the sake of argument that the majority is correct and that Agent Enlsey recklessly omitted copies of the images, the totality of the circumstances in a corrected affidavit that included copies of the images, Agent Ensley's expert conclusion that one of the images was child pornography, and Perkins' previous convictions for incest and child molestation, would still demonstrate a fair probability that Perkins possessed child pornography.

Again, because the majority fails to afford the district court its due deference, retroactively applies a new rule that is likely unsupported by our case law, and improperly weighs the totality of circumstances in a probable cause determination, I respectfully dissent.